UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **J.D. THOMPSON, III** | **CIVIL ACTION NO. 3:12-cv-0302** |
| LA. DOC #106841 | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **WARDEN JONES, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff J.D. Thompson, III, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 23, 2012. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the River Bend Detention Center (RBDC), Lake Providence, and he complains that he has been denied appropriate medical care and that he is being detained beyond his release date. He sued a variety of corrections officials praying for a transfer to another facility where he can obtain proper medical care; he also seeks release from custody and money damages. [Docs. 1, 5, and 7]In one of his pleadings he requested the appointment of counsel to assist him in this litigation. [Doc. 7]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint and all pending motions be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Background*

*1. Original Complaint [Doc. 1]*

In his original complaint, plaintiff claimed that, according to his Master Prison Record, he should have been released from custody on January 22, 2012.[1]  Inquiries were made and some unnamed individual advised him that his release was delayed because he was unable to provide an address where he planned to reside upon his release.  Plaintiff disputed this claim asserting that he would reside with his wife in the residence they have shared since 2000.

He also complained that he was coughing up blood for a period of approximately a month and a half prior to the date he filed his original complaint.  He was prescribed penicillin by RBDC's physician, Dr. Bailey, but, according to plaintiff, Bailey did not perform an examination prior to prescribing the medication.  Plaintiff returned to Dr. Bailey and complained of nose-bleeds. Plaintiff was then given aspirin as a blood thinner to prevent stroke. According to plaintiff, he was denied more appropriate medication – namely Coumadin and Lovenox®[2] – during his incarceration such

---

[1] According to the LDOC's Inmate Locator Service, plaintiff's release date is September 5, 2013. See http://doc.la.gov/quicklinks/offender-info/offender-locator/

[2] Coumadin® or warfarin is a medication used to prevent blood clots from forming or growing larger. It is prescribed for people with certain types of irregular heartbeat, people with prosthetic (replacement or mechanical) heart valves, and people who have suffered a heart attack. Warfarin is also used to treat or prevent venous thrombosis (swelling and blood clot in a vein) and pulmonary embolism (a blood clot in the lung). Warfarin is in a class of medications called anticoagulants ("blood thinners"). It works by decreasing the clotting ability of the blood. Lovenox® or enoxaparin is a medication used to prevent blood clots in the leg in patients who are on bedrest or who are having hip replacement, knee replacement, or stomach surgery. It is used in combination with aspirin to prevent complications from angina (chest pain) and heart attacks. It is also used in combination with warfarin to treat blood clots in the leg. Enoxaparin is in a class of medications called low molecular weight heparins. It works by stopping the formation of substances that cause clots.  Medline Plus, Drugs & Supplements,
A Service of the U.S. National Library of Medicine and National Institutes of Health online at http://www.nlm.nih.gov/medlineplus/druginformation.html

that the "medical neglect" resulted in plaintiff being "rushed" to the E.A. Conway Hospital in Monroe due to congestive heart failure, coronary artery disease, and atrial fibrillation. He claims that these conditions have resulted in blood clots and memory loss. Plaintiff also complained of numbness in his hands and feet, cramps, blurred vision, tightness in the chest, weakness in the legs and that his hands turned purple. He implied that he was accused of malingering by one of the prison guards and denied further treatment on that basis.

Plaintiff concluded his complaint with a prayer that he be released soon in accordance with the release date on his Master Prison Record so that he can obtain appropriate medical care; alternatively he prayed for an order transferring him to an LDOC Medical Facility. Plaintiff also prayed for compensatory damages for "mental anguish, stress, pain and suffering mentally, physically and emotionally from medical neglect which cause me to be hospitalized and for failure to submit information that would allow my release without reasonable cause." He further prayed for damages of $5000 for medical neglect and $500/day for each day he remains in custody beyond the January 22, 2012 release date.

**2. *First Amended Complaint [Doc. 5]***

On February 8, 2012, plaintiff submitted a hand-written amended complaint. Plaintiff alleged that on January 19, 2012, he noticed that his left hand started turning dark blue/purple. He also experienced dizziness and attributed both symptoms to the earlier orders of Dr. Bailey which discontinued plaintiff's prescription blood thinners. His efforts to obtain these drugs were denied by Lt. Dre and Nurse Lena who advised plaintiff that only the physician could reinstate the order for the prescription "blood thinners."

The following day, plaintiff requested assistance from Captain Poche. He advised Captain

Poche that Dr. Bailey had taken him off of prescription blood thinners due to a persistent nose bleed and due to the fact that plaintiff was coughing up blood. Poche spoke to the nurse and arrangements were made to have plaintiff transported to the E.A. Conway Hospital on Monday, January 23. Plaintiff advised that he did not think he would survive the weekend.

Plaintiff also complained that he was not released on January 22 and alleged that the reason provided to him for the delay was that he is a convicted sex offender and his anticipated residence was within a prohibited radius of a nursing home.

Plaintiff further alleged that he experienced a "mini-stroke" on January 22, 2012, and called for medical assistance. He was examined by Nurse Dean who authorized transportation to the Conway Hospital. Upon arrival, plaintiff was examined and given an injection of Lovinox and hospitalized. During the period he was hospitalized, he spoke to Captain Willis about his release date. After the conversation, plaintiff was encouraged and believed that he would be released from the hospital and allowed to return to his residence. However, he was returned to RBDC on January 26, 2012, instead of being released from custody.

On January 27th, Mr. Grear from the Department of Probation and Parole spoke to plaintiff at RBDC; he obtained copies of pertinent documents and promised to contact RBDC on January 29, 2012. However, plaintiff remained in custody. On February 3rd, he spoke to Captains Willis and Poche and an unidentified Lieutenant who advised him that he would probably have to serve the full term of his sentence. He concluded his amended complaint with a request that the defendants, Willis, Poche, and Harris be directed to show cause why plaintiff is being held in custody beyond his January 22, 2012, discharge date. He also requested an order directing Willis to show cause why plaintiff was discharged from the hospital while still receiving medical treatment. He also joined the

East Carroll Parish Sheriff's Department as a defendant and argued that Poche used racial slurs when speaking to him.

*3. Second Amended Complaint and Request for Transfer [Doc. 7]*

On March 16, 2012, plaintiff filed another amended complaint. Therein he complained that on March 12, 2012, he requested and was denied a PTINR, a test to determine the appropriate dosage of Coumadin®.[3] His requests for blood pressure testing were also ignored notwithstanding the fact that he is taking medication for that condition.

Plaintiff requested a transfer to an LDOC medical facility. He also requested a form to seek appointment of counsel to represent him in this litigation.

He claimed that he was transferred from H-dorm to I-dorm because of a dispute he had with Corrections Officer Dorothy Quinn. According to plaintiff, he was denied medication at "pill call" because he was away from the dorm on "sick call." According to plaintiff, when he requested his medication, Quinn used derogatory language and had to be restrained by other corrections officers from physically assaulting plaintiff; she then charged him with a disciplinary rules violation which resulted in plaintiff's placement in lock down for a period of 25 days.

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the

---

[3] PT refers to Prothrombin Time; INR refers to International Normalized Ratio, blood tests used to evaluate blood clotting and coagulation times and factor and the effectiveness of anticoagulants such as Coumadin.® See Lab Tests Online®
http://labtestsonline.org/understanding/analytes/pt/tab/test

complaint, and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. . *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably

meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's original complaint set forth his claim and the basis for his cause of action; he has filed amended complaints and other pleadings which provide additional details and facts in support of his claims for relief. He need not be permitted further amendment because his claims – taken as true for the purposes of this report – fail to state a claim for which relief may be granted.

## 2. Medical Care

Plaintiff is a convict who complains that he has been denied prompt and appropriate medical care by corrections officers and various health care professionals, including Dr. Baily at RBDC.

The constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly,

or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the named defendants or any of the other corrections officers or healthcare officials identified in his pleadings. As a matter of fact, it is manifestly obvious that plaintiff simply disagrees with the diagnosis and course of treatment that were recommended by the health care professionals, including Dr. Bailey, who have been caring for plaintiff during his confinement at RBDC. Plaintiff's disagreement with the diagnosis and course of treatment that was ultimately provided to him falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

At worst, plaintiff implies negligence or malpractice on the part of the defendants. However, deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifference standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an excessive risk of injury to him, and, that they were both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they drew that inference. *Id.* at 837.

Thus, under the standard of deliberate indifference, evidence of unsuccessful medical

8

treatment, negligence, neglect, or even gross medical malpractice is insufficient. *Gobert v. Caldwell*, 463 F.3d 339, 347 (5th Cir.2006); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999) ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."); *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir.1993) ("It is firmly established that negligent or mistaken medical treatment or judgment does not implicate the eighth amendment and does not provide the basis for a civil rights action.").

In short, "[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment." *Gobert*, 463 F.3d at 346. For that reason, mere disagreement with medical diagnosis and treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *Id.* Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir.1999). Federal constitutional protections are not violated merely because an inmate's medical treatment was unsuccessful or because a condition persisted despite treatment. *Gobert*, 463 F.3d at 346.

Furthermore, plaintiff has previously raised virtually identical claims concerning the medical care he has been receiving during his imprisonment. *See J.D. Thompson, III v. Donnie Adams, et al.*, Civil Action No. 3:11-cv-0337. Those claims were analyzed and dismissed with prejudice for failing to state a claim for which relief may be granted.

### *3. Original Prayer for Injunctive Relief and Motion for Emergency Injunction*

Both in his original complaint [Doc. 1] and in Second Amended Complaint [Doc. 7], plaintiff prayed for an order directing the defendants to transfer him to an LDOC medical facility.

9

Injunctive relief in the form of "superintending federal injunctive decrees directing state officials" is an extraordinary remedy. *See Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir.1985). In order to obtain a preliminary injunction or temporary restraining order, such as is requested in Doc. 7, a plaintiff must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. *See Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir.2005).

As shown above, plaintiff has not demonstrated that he will likely prevail on the merits of his claims. The facts alleged by plaintiff establish that he was not the victim of deliberate indifference. Indeed, by his own admission, he has been treated by physicians both at the prison and at the E.A. Conway Hospital. By the same token, the findings of these physicians also demonstrate that plaintiff is unlikely to be able to establish the threat of irreparable injury.

Further, plaintiff demands his transfer to another prison. However, such relief is not available, even if his claims are otherwise meritorious. Plaintiff is an LDOC inmate. Under Louisiana law, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. <u>The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department</u>..." La. R.S.15:824(A).

10

Plaintiff is an LDOC inmate and therefore his placement is solely within the purview of the LDOC. Broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974) To hold that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

Prisoners simply do not have a constitutionally derived liberty interest in being held in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984); *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000).

Therefore, to the extent that plaintiff seeks an order directing the defendants to transfer him to another prison, his claim should be dismissed for failing to state a claim for which relief may be granted.

*4. Release Date*

Plaintiff also contends that he is being unlawfully detained beyond his release date. He seeks both injunctive relief – i.e., his immediate release – and compensatory damages.

Plaintiff is a prisoner in state custody. He filed his complaint pursuant to the provisions of 42 U.S.C. §1983. However, with regard to his claims concerning the calculation of his release date, it is clear that plaintiff is challenging the constitutionality of his continued custody and not the conditions of his confinement. *Habeas corpus* (28 U.S.C. §§2241 or 2254) provides the appropriate remedy for prisoners challenging their convictions or the duration of their sentences. *See Preiser v. Rodriguez*, 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Pugh v. Parish of St. Tammany*, 875 F.2d 436, 439 (5th Cir.1989). Section 1983 suits are the proper vehicle to attack unconstitutional conditions of confinement and prison procedures. *See Cook v. Texas Dep't of Crim. Justice*, 37 F.3d 166, 168 (5th Cir.1994).

The Fifth Circuit has adopted a bright-line rule for resolving whether a prisoner's claim should be properly characterized as a § 1983 claim or one for *habeas* relief – if a favorable determination would not automatically entitle the prisoner to accelerated release, the proper action is a § 1983 suit. *Carson v. Johnson*, 112 F.3d 818, 820-21 (5th Cir.1997) (citation omitted).

Plaintiff complains that he is being held in custody beyond his release date; a favorable determination would entitle him to immediate release. Indeed, that is the relief he requests. Therefore, to the extent that he seeks *habeas corpus* relief in this civil rights complaint, he fails to state a claim for which relief may be granted.

Further, to the extent that plaintiff demands compensatory damages for each day served in custody beyond January 22, 2012, such claim is barred by the principals enunciated in *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck*, the Supreme Court held that a § 1983 plaintiff may not recover damages for an unlawful conviction or sentence unless the plaintiff shows "that the conviction or sentence has been reversed on direct appeal,

12

expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*." 512 U.S. at 486-87. *Heck* also applies to challenges to the computation of a prisoner's sentence. *See McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 160-61 (5th Cir.1995).

Thus, before plaintiff may obtain money damages for his claim of false imprisonment, he must first demonstrate that the computation of his sentence was reversed, expunged, or otherwise declared invalid.

### 5. Disciplinary Conviction and Confinement to Lock Down

In his second amended complaint, plaintiff also implied that his due process rights were violated when he was wrongly convicted of a disciplinary rules violation and thereafter confined to lock down for a short period of time.

By virtue of a valid criminal conviction and subsequent legal confinement, a prisoner loses his expectation of liberty. See *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). In order to invoke pre-deprivation procedural due process protections, a prisoner must first establish that he has been subjected to "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). On the basis of *Sandin*, the Fifth Circuit has found that "'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights); *Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir.1996) (federal prisoner's detention for three months in administrative segregation did not constitute a significant atypical hardship

which constituted a deprivation of a liberty interest). The Fifth Circuit has also rejected a state prisoner's claim that the additional restrictions imposed on those in administrative segregation violated his due process rights. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (per curiam). It stated " 'absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest." ' *Id.* at 580 (quotation omitted).

Thus, when a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). The Fifth Circuit has held that "... mere[ ] changes in the conditions of [ ] confinement do not implicate due process concerns." See *Madison*, 104 F.3d at 768; see also *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications.").

In short, plaintiff has again failed to state a claim for which relief may be granted.

### 6. *Appointment of Counsel*

Finally, plaintiff has requested appointment of counsel.

Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff. In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal

courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." *See Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself. Plaintiff has not demonstrated the inability to secure representation.

Plaintiff has managed to file his original complaint and two amended complaints setting forth his causes of action against the named defendants. No special legal knowledge is required of plaintiff herein. Plaintiff's claims are not atypical of those often asserted in civil rights litigation and are not complex. At this stage of the proceedings he need not be versed in the law so long as he

can recite the facts and his demands with sufficient clarity, and that he has done so far.

Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to warrant the appointment of counsel.

## *ORDER*

Therefore, considering the foregoing,

Plaintiff's Motion for the Appointment of Counsel [7] and his Motion for Emergency Injunction [Doc. 7] are **DENIED;** and,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints [Docs 1, 5, and 7] be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, March 22, 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE